## CAROL HARRISON v. RICHARD DIX HANVEY.

(Filed 27 August, 1965.)

**1. Process § 9—**

In order to sustain service of process by publication plaintiff must show that the case is one in which service by publication is authorized by statute and that the service by publication has been made in accordance with statutory requirements.

**2. Same—**

Service of process by publication is in derogation of the common law and statutes authorizing such service are to be strictly construed, both in regard to grant of authority and in regard to the mechanics of such service.

**3. Same; Constitutional Law § 24—**

A resident of the State who has departed with intent to defraud his creditors or to avoid service of process, or a resident who keeps himself concealed in the State with like intent, is amenable to service of process by publication under G.S. 1-98.2(6).

**4. Same—**

An affidavit that a resident of the State has departed the State, without averment that the departure was with the intent to defraud creditors or

avoid service of process, is insufficient basis for an order of service of process upon such resident by publication, such intent being equally required for service by publication on a departing resident as on a resident who conceals himself within the State. G.S. 1-98.2(6).

**5. Same—**

Even though averment that defendant was concealing himself in the State with intent to defraud his creditors or to avoid service of process may be sufficient to support an order for service by publication, the court upon special appearance and motion to set aside such service must hear evidence and find the facts.

**6. Same— Evidence held insufficient to show intent to defraud creditors or to avoid service so as to support service under G.S. 1-98.2(6).**

This action was instituted to recover for personal injuries sustained by plaintiff in an automobile accident. Plaintiff's evidence tended to show that defendant could not be found in the county of his residence, that his mother and mother-in-law had not seen him for twelve months or more, that he had left his rooming house without forwarding address, etc., but there was no evidence that defendant knew that the action would be or had been instituted. *Held:* The evidence is insufficient to show that defendant had departed the State with intent to defraud his creditors or to avoid the service of process, or that he was concealing himself herein with like intent, and motion entered by defendant's insurer to quash service by publication on the defendant should be allowed.

**7. Process § 9—**

Affidavit for service of process by publication under G.S. 1-98.4 must show the name and residence of the person to be served or, if they are unknown, that diligent search and inquiry had been made to discover such residence and, even if unknown, they must be set forth with as much particularity as is known to the applicant, and the fact that defendant could not be found at his last residence does not eliminate this requirement, since the clerk is required to mail a copy of the notice to such address and such notice might be forwarded to defendant notwithstanding his absence from his last known residence.

**8. Same—**

Application for service of process by publication must advise defendant not only as to the time limit for making his defense but also that upon his failure to appear plaintiff would apply to the court for the relief sought.

**9. Same; Constitutional Law § 24—**

The purpose of publication is to give notice, and publication of notice of service must be in a newspaper most likely to give notice to defendant notwithstanding the omission of such requirement in the statute, G.S. 1-99(1), since due process so requires.

APPEAL by defendant from *McConnell, J.,* November-December 1964 Civil Session of IREDELL.

This action for damages for personal injuries was first instituted by the issuance of summons and the filing of a complaint on May 4, 1961.

The summons directed the Sheriff of Mecklenburg County to summon "Richard Dix Hanby, 1705 South Boulevard, Charlotte, N. C." The complaint alleges that plaintiff, a resident of New York, was, while a passenger in the automobile of Richard Dix Hanby, a resident of North Carolina, injured by his negligence (specified) on July 17, 1960, in Iredell County.

On May 10, 1961, the Sheriff of Mecklenburg County returned the summons endorsed "after due and diligent search Richard Dix Hanby not to be found in Mecklenburg County." An alias summons was issued to Mecklenburg County on July 31, 1961, and returned on August 14, 1961, similarly endorsed. On July 15, 1963, plaintiff amended her complaint by changing the spelling of defendant's name from "Hanby" to "Hanvey." The following day, July 16, 1963, summons was issued for Hanvey and forwarded with the following notation: "Richard Dix Hanvey has lived at 1705 South Boulevard, Charlotte; 2430 North Brevard, Charlotte, and 1029 Louise Ave., Charlotte." This summons was returned July 26, 1963, unserved. Thereafter summonses were issued on October 2, 1963; December 10, 1963; March 6, 1964; June 2, 1964; August 25, 1964; and November 24, 1964. Each was returned unserved with the notation that after due and diligent search Richard Dix Hanvey was not to be found in Mecklenburg County.

On July 15, 1963, the day the complaint was amended, W. R. Battley, attorney for plaintiff, made an affidavit in which he averred, *inter alia:*

> "That after due and diligent search, the defendant, Richard Dix Hanvey, cannot be found within the State of North Carolina and service of process cannot be had on the defendant within the State of North Carolina.

> "That the plaintiff has a valid cause of action against the defendant for personal injuries received arising out of an automobile accident caused by the negligence of the defendant.

> "That the defendant at the time of the automobile accident on the 17th day of June, 1960 *(sic)* was a resident of this state but has departed the state, or keeps himself concealed in this state to avoid service of summons."

Upon this affidavit, on the same day, the Clerk of the Superior Court of Iredell County ordered: "that service of process in the above entitled action upon Richard Dix Hanvey be made by publication in the Statesville Record and Landmark, a newspaper published in Statesville, Iredell County, North Carolina, once a week for four (4) successive weeks, of the Notice issued by the undersigned as provided by General Statutes 1-99.2."

Pursuant to this order the following notice was published on July 16, 23, 30, and August 6, 1963:

"To: RICHARD DIX HANVEY.

"Take Notice that a verified complaint seeking relief against you has been filed in the above entitled action.

"The nature of the relief sought is as follows: The plaintiff seeks damages for personal injuries received in an automobile accident caused by the negligence of the defendant.

"You are required to make defense to such pleading not later than the 2nd day of September, 1963."

At the time of the accident complained of defendant's automobile was covered by a policy of liability insurance issued by Grain Dealers Mutual Insurance Company (Insurer), affording coverage of $5,000.00. On December 10, 1963, plaintiff's counsel forwarded a copy of the complaint to Insurer, to advise it that it had 30 days from December 12, 1963, in which to answer or otherwise plead. Upon receipt of this letter Insurer referred the matter to the firm of Smith, Moore, Smith, Schell & Hunter, Attorneys, who immediately sought to locate defendant through the adjusting firm which handled the investigation of the accident in 1960. It reported to counsel that neither defendant's mother nor his mother-in-law had seen defendant in a year; that defendant had not gotten in touch with the adjusting firm, with Insurer, or with counsel; and that "his whereabouts are unknown." This information is contained in an affidavit dated December 2, 1964, by Richmond G. Bernhardt, Jr., Attorney, of counsel for Insurer.

On January 6, 1964, counsel for Insurer, pursuant to its right and obligation to control and defend the litigation against its insured, entered a special appearance and moved the court "to order the purported service of process on this defendant by publication be quashed, that the order for service of process by publication be set aside, and that the action be dismissed for want of jurisdiction over this defendant" for that: (1) no personal service of process has been made on defendant and no property attached; (2) G.S. 1-98.2(6), which purports "to establish in personam jurisdiction in cases of this kind," is unconstitutional as a violation of due process; (3) there has been no hearing to determine judicially that defendant has departed the state, and service of process upon him based solely upon the affidavit of counsel deprives him of due process of law; (4) plaintiff has failed to comply with G.S. 1-98.4(1); (5) the form of notice failed to comply with G.S. 1-99.3, in that it did not warn defendant that upon his failure to make defense plaintiff would apply to the court for the relief sought;

(6) the clerk failed to mail a notice of the service of process to defendant as required by G.S. 1-99.2; (7) the newspaper in which the notice was published in Iredell County was not calculated to give defendant, a one-time resident of Mecklenburg County, notice of the pending action, and, therefore, deprived him of due process.

When the matter was heard on December 3, 1964, counsel for plaintiff filed an additional affidavit, wherein he recited the unsuccessful efforts of the sheriff to locate defendant in Charlotte and his own efforts to locate him through the Department of Motor Vehicles, which informed him that when defendant's driver's license expired September 9, 1963, it was not renewed. Judge McConnell entered an order in which he held that plaintiff had met the statutory provisions relating to service by publication and that the service of summons in this case was valid. He also overruled defendant's challenges to the constitutionality of G.S. 1-98.2(6). Defendant excepted and appealed.

*Battley & Frank by W. R. Battley for plaintiff appellee.*
*Smith, Moore, Smith, Schell & Hunter by Richmond G. Bernhardt, Jr., for defendant appellant.*

SHARP, J. To sustain service upon defendant by publication, plaintiff must show: (1) that the case is one in which service by publication is authorized by statute; and (2) that the questioned service has been made in accordance with statutory requirements. Counsel for defendant denies that defendant is a member of the class defined by G.S. 1-98.2(6), the statute under which plaintiff proceeds. He asserts that, even if defendant were a member of that class, a personal judgment against him based on constructive service would violate due process. He further contends that, in any event, plaintiff has not fulfilled the statutory requirements for service by publication.

Service of process by publication is in derogation of the common law. Statutes authorizing it, therefore, are strictly construed, both as grants of authority and in determining whether service has been made in conformity with the statute. *Jones v. Jones,* 243 N.C. 557, 91 S.E. 2d 562; *Nash County v. Allen,* 241 N.C. 543, 85 S.E. 2d 921; *Comrs. of Roxboro v. Bumpass,* 233 N.C. 190, 63 S.E. 2d 144.

This action is neither *in rem* nor *quasi in rem* (see *Bernhardt v. Brown,* 118 N.C. 700, 705, 24 S.E. 527, 528); it is an action *in personam* for a money judgment against a defendant who was a resident of the state at the time the cause of action arose. Plaintiff has not attempted to serve defendant under G.S. 1-105.1. She has attempted service under G.S. 1-98.2(6), which authorizes publication "where the defendant, a resident of this state, has departed therefrom or keeps himself concealed

therein *with intent to defraud his creditors or to avoid the service of summons.*" (Italics ours.) Plaintiff's counsel takes the position that the italicized prepositional phrase applies only to the second predicate, and that service by publication is authorized upon his affidavit that defendant, a resident of North Carolina, "has departed the state, or keeps himself concealed in this state to avoid service of the summons"; that he cannot, after due and diligent search, be found in North Carolina; and that service of process cannot be had upon him within the state.

Before we can pass upon the sufficiency of plaintiff's affidavit, to bring defendant within the class of persons defined by G.S. 1-98.2(6), we must determine the meaning of the statute. Since no comma separates the two predicates in G.S. 1-98.2(6), it is our view, and we hold, that the intent to defraud creditors or to avoid the service of summons must be shown both as to departure and as to concealment. This interpretation is, in effect, the wording of G.S. 1-440.3(4), the statute which specifies the grounds for attachment. It was likewise thus spelled out in the Code of 1883, § 218(2) (C.C.P., § 83), which authorized service by publication "where the defendant, being a resident of this state, has departed therefrom, with intent to defraud his creditors or to avoid the service of summons, or keeps himself concealed therein *with like intent.*" (Italics ours.) The italicized words were eliminated from the Code of 1883, § 218(2), by P. L. of 1895, ch. 334. Minus these words § 484(2) of the Consolidated Statutes of 1919 was identical with the Code of 1883, § 218(2), and its identical language was carried forward in G.S. 1-98(2). Sess. Laws 1953, ch. 919, rewrote the statute relating to service by publication, but G.S. 1-98.2(6) is in the wording of G.S. 1-98(2). See 31 N.C.L. Rev. 391.

In *Church v. Miller,* 260 N.C. 331, 132 S.E. 2d 688, the plaintiff sought to obtain service of process upon the individual defendant by publication. The affidavit alleged that "after due and diligent search, said defendant, although a resident of North Carolina, cannot be found in this state and personal service cannot be made upon him in this state." The complaint, however, alleged that defendant was not a resident of North Carolina. Although basing our decision on the proposition that G.S. 1-98.2(6) does not authorize service of process by publication on a nonresident, the Court noted, *per* Denny, C.J., that "there is no allegation in the affidavit or in plaintiff's complaint, alleging that the defendant left the state with the intent to defraud his creditors or to avoid service of process." *Id.* at 334, 132 S.E. 2d at 690. If a defendant is, in fact, a resident of North Carolina who has departed the state with intent to defraud his creditors or to avoid service of process or who keeps himself concealed in the State with like intent, he is

amenable to service by publication if it is made in conformity with the statutory requirements.

"(T)he authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties. * * * The responsibilities of that citizenship arise out of the relationship to the state which domicile creates. That relationship is not dissolved by mere absence from the state. The attendant duties, like the rights and privileges incident to domicile, are not dependent on continuous presence in the state. One such incidence of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him." *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343, 132 A.L.R. 1357, 1361; *accord, Allen v. Superior Court*, 41 Calif. 2d 306, 259 P. 2d 905; 42 Am. Jur., Process §§ 67, 70 (1942); Restatement, Conflict of Laws §§ 47, 75 (1934).

The great majority of cases which have considered the question have not applied to *residents* the doctrine of *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565, that a judgment *in personam* rendered in a state court against a nonresident upon constructive service cannot be enforced even in the state where it was rendered. They "have sustained the validity of a personal judgment recovered against a resident or a domestic corporation upon substituted or constructive service of process where he or it could not be personally served within the state, and the constitutionality of statutes authorizing such service has pretty generally been sustained so far as residents are concerned." 126 A.L.R. 1475. A number of cases, however, reach a contrary conclusion. The character of the service usually plays a determinative role in a decision whether the service will be sustained. For a full discussion and collection of cases see Annot., Substituted service, service by publication, or service out of the state, in action in personam against resident or domestic corporation, as contrary to due process of law, 126 A.L.R. 1474, supplemented in 132 A.L.R. 1361.

The meanings attached to the terms *personal, constructive,* and *substituted* service are so varied that individual statutes must be examined. In general, however, *personal service* means actual service of process upon defendant personally, wherever accomplished; *constructive service*, service by newspaper publication; *substituted service*, service upon

some member of defendant's family at his usual place of abode or upon a statutory agent. *Service by mail* is self-explanatory. Comment, Personal Jurisdiction over Absent Natural Persons, 44 Calif. L. Rev. 737. Personal service on a resident outside the state or substituted service at his place of abode is much more likely to be sustained than is constructive service, which, of all the methods, is the least likely to give notice. As Mr. Justice Jackson pointed out in *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 315, 94 L. Ed. 865, 874, 70 S. Ct. 652, 658:

> "It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed."

In *Milliken v. Meyer, supra,* the personal judgment of a Wyoming court was upheld against a resident who had been *personally served* in Colorado pursuant to the Wyoming statutes which provided:

> "Personal service out of state. In all cases where service may be made by publication under the provisions of this chapter, personal service of a copy of the summons and the petition in said action may be made out of the state. . . ." Wyo. Comp. Stat. 1920, § 5641.

> "Service by publication may be had in either of the following cases: . . . 6. In actions where the defendant, being a resident of this state, has departed from the county of his residence with the intent to delay or defraud his creditors, or to avoid the service of a summons, or keeps himself concealed with like intent." Wyo. Comp. Stat. 1920, § 5636.

In *McDonald v. Mabee*, 243 U.S. 90, 61 L. Ed. 608, 37 S. Ct. 343, L.R.A. 1917F 458, after an action on a note was instituted against the defendant in Texas, he left to establish a home elsewhere, his family remaining there in the meanwhile. The defendant subsequently returned to Texas for a short time and then established his domicile in Missouri. The only service upon him was by publication in a newspaper once a week for four weeks after his final departure. The court held the judgment based upon such service void, but, speaking through Mr. Justice Holmes, said:

> "Perhaps in view of his technical position and the actual pres-
> ence of his family in the state, a summons left at his last and usual
> place of abode would have been enough. But it appears to us that
> an advertisement in a local newspaper is not sufficient notice to
> bind a person who has left a state, intending not to return. To dis-
> pense with personal service the substitute that is most likely to
> reach the defendant is the least that ought to be required if sub-
> stantial justice is to be done." *Id.* at 92, 61 L. Ed. at 610, 37 S. Ct.
> at 344, L.R.A. 1917F at 459.

Personal service, either within or without the state, undoubtedly
affords the defendant the greatest degree of protection, for it gives him
actual notice. The defendant who leaves the state temporarily and in
good faith and is amenable, with reasonable effort, to personal service
while absent, may well argue that he is entitled to it. But a defendant
who leaves the state with the intent to defraud his creditors or to
avoid the service of process does not merit similar solicitude. 42 Am.
Jur., Process § 72 (1942); 72 C.J.S., Process § 56b (1951). See Com-
ment, Personal Jurisdiction over Absent Natural Persons, 44 Calif. L.
Rev. 737, 741. If he conceals his whereabouts well enough, he renders
personal service impossible either within or without the state. If a de-
fendant has fraudulently fled the state or successfully keeps himself
concealed therein, a plaintiff with a good cause of action may be greatly
disadvantaged and the defendant will profit from his fraud unless the
plaintiff can serve him with process by publication. Of necessity, often
no better notice can be given. No citizen and resident of a state should
be allowed, by flight, temporary absence, or concealment, to escape his
legal obligations and thwart the efforts of the courts of his state to en-
force the rights of others against him.

*Skala v. Brockman,* 109 Neb. 259, 190 N.W. 860, involved the validity
of service by publication under a Nebraska statute which provided for
service by publication "in all actions where the defendant, being a resi-
dent of the state, has departed therefrom, or from the county of his
residence, with intent to delay or defraud his creditors or to avoid
the service of a summons or keep himself concealed therein with like
intent." The plaintiff sued defendant, his lessee, "for a chattel mortgage
on crops." He alleged in his complaint and affidavit for publication that
the defendant was a resident of Cuming County; that he had departed
and *absconded* from the county with intent to delay and defraud the
plaintiff in the collection of the debt sued on; that he was keeping him-
self concealed with like intent and with intent to avoid service of sum-
mons in said action; and that it was impossible to serve him with sum-
mons in the state. A copy of the summons was left at the defendant's

last known residence on the farm, and the plaintiff also served summons by publication. Two days after the completion of such service the defendant appeared specially and moved to dismiss the action for lack of jurisdiction of the court over his person. He averred that 5 days before the institution of the action he had moved to Indiana with the intention of abandoning his domicile in Nebraska and permanently residing there. Upon the hearing the lower court found the facts to be that the defendant had departed the county and state of his residence to hinder and delay his creditors and to avoid service of summons. It sustained *the service by publication*, but not the substituted service. Upon appeal, the Supreme Court of Nebraska held that, under the statute quoted above, an absconding resident might be served with summons by publication and that the plaintiff had fully complied with the statutory requirement for such service.

Definitions and discussions of absconding debtors are usually found in cases involving attachment statutes. Such definitions, however, are equally applicable here. We have found no better exposition than the one which appears in *Stafford v. Mills*, 57 N.J.L. 574, 578, 32 Atl. 7, 8:

"An absconding debtor is one who, with intent to defeat or delay the demands of his creditors, conceals or withdraws himself from his usual place of residence beyond the reach of process. It is not necessary that he depart from the limits of the state in which he has resided. * * * But in this, as in many other matters, each case must depend upon its own peculiar distinctive facts and circumstances, and the intent can be drawn from the acts of the defendant. One is naturally held to have intended the results of his own acts. * * * In one case it (evading process) may be by concealment in his own house. It may consist in going from place to place so quickly as to evade meeting with service or process anywhere. There is a limit to the creditors' search for him, else he might never be served with process, and no attachment would ever be sustained. The creditor is bound to ascertain, if he can do so by all natural ordinary means at hand, his debtor's whereabouts, in order to serve him with process, but this obligation has its limits in reason and common sense. A debtor may, by a careful watch of the action of the creditors, or by information from others, elude his creditors for an indefinite time, and yet he might produce proof of having been seen in so many places that it would seem reasonable that service of process could be made. So it can be perceived that concealment, with intent to defeat or delay his creditors, has a relative significance. It must depend upon the facts of each case, and they must be such, and of such probative force and effect, that

the court can conclude that the debtor was eluding the service of process; that he intended to do it, and that his conduct or concealment was such as to lead his creditors to the natural belief that he absconds, and when this state of affairs exists the debtor becomes subject to the writ of attachment as an absconding debtor."

Counsel for defendant cites *Bernhardt v. Brown, supra,* in support of defendant's contention that a valid judgment may not be obtained against a defendant served under G.S. 1-98.2(6) without attachment of property. That case is not authoritative here. It involved the validity of three judgments in attachment obtained in the court of a justice of the peace against a domestic corporation whose officers could not be found in the state. The court held the judgments void because, although the Code of 1883, § 218(7) (the same as G.S. 1-98(8), repealed in 1953), permitted service by publication on officers of the corporation, the General Assembly had failed, *casus omissus,* to authorize attachment of the property of a domestic corporation in such instances. The case did not involve the Code of 1883, § 218(2), as there was no suggestion that the officers had absconded or concealed themselves to avoid service. Any reference, therefore, to the necessity of attachment when proceeding under § 218(2) was *dictum.*

We now come to the question whether the affidavit upon which the order of publication was secured and those affidavits considered by the judge upon the hearing are sufficient to support his conclusions that this is a case falling within the terms of G.S. 1-98.2(6); and that the statutory provisions relating to service by publication have been met. Plaintiff has not alleged that defendant has departed the state with intent to defraud his creditors. She has alleged that he has departed the state or, in the alternative, that he keeps himself concealed here to avoid his creditors. As heretofore pointed out, under G.S. 1-98.2(6), the mere departure of a resident from the state will not authorize *service by publication* in an action such as this. Plaintiff's right to service by publication must arise, therefore, if at all, on the alternative allegation that defendant keeps himself concealed herein to avoid service of process.

Although the weight of authority is to the contrary (see Annot., Sufficiency of affidavit as to due diligence in attempting to learn whereabouts of party to litigation, for the purpose of obtaining service by publication, 21 A.L.R. 2d 929), yet this Court held in *Brown v. Doby,* 242 N.C. 462, 87 S.E. 2d 921, that an averment in the words of the statute of the ultimate fact "that, after due diligence, personal service cannot be had within the state," was a sufficient compliance with statutory requirements without stating any of the probative, or evidentiary, facts. Assuming that the same rule would apply to an averment of ab-

sconding or concealment, the court must hear the evidence, find the facts, and determine the validity of the service, when a defendant, upon a motion to vacate an order for publication and to quash the service based upon it, questions the sufficiency of the affidavit or evidence upon which plaintiff proceeds or offers evidence contradicting it. *Brown v. Taylor,* 174 N.C. 423, 93 S.E. 982; *Cooper v. Wyman,* 122 N.C. 784, 29 S.E. 947; 72 C.J.S., Process § 112 (1951). The affidavits before Judge McConnell, taken as true, establish these facts: On July 17, 1960, defendant was a resident of Charlotte, North Carolina. On that day a cause of action for damages for personal injuries arose in plaintiff's favor against him in Iredell County. On May 4, 1961, approximately 10 months later, plaintiff brought this action in Iredell County. On May 10, 1961, and on August 14, 1961, the sheriff of Mecklenburg County reported that defendant could not, after diligent search, be found in Mecklenburg County. So far as the record discloses, he made no further effort to find defendant until July 26, 1963, almost two years later. Between then and November 24, 1964, he made six additional fruitless searches. Defendant has not renewed his North Carolina driver's license. When, at an undisclosed date, Insurer's adjusting firm sought information as to his whereabouts from his mother and his mother-in-law, one reported she had not seen him for 12 months, the other, for two years. The address on his driver's license was a rooming house in Charlotte, the operator of which told plaintiff's counsel (also at an undisclosed date) that defendant had departed, leaving no address, "about 6 months prior to the date affiant talked to her." Conceding, *arguendo,* that defendant's failure to renew his North Carolina driver's license and the failure of the sheriff to find him in Charlotte constitute evidence of his departure from the state, yet there is no averment that his purpose in departing was to defraud creditors or avoid service of process. Furthermore, unless the inability of counsel and the sheriff to locate defendant in Mecklenburg County be held evidence of absconding or concealment, there is no such evidence. Nothing in the affidavits suggests that defendant ever knew that plaintiff intended to sue him as a result of the accident on July 17, 1960. Compulsory liability insurance does not connote compulsory litigation. Plaintiff made no effort to find defendant for 10 months after the accident. There is no evidence that defendant owed any debts of any kind or that he was having domestic troubles. Adjusters reported no contact with his wife. We think this evidence is insufficient to establish that defendant keeps himself concealed in the state in order to avoid service of process.

Furthermore, plaintiff has not complied with the statutory requirements for service of process by publication. To secure an order for such

service, in his affidavit the applicant must state, *inter alia,* in addition to averring facts which show the action to be one of those specified in G.S. 1-98.2, the name and residence of the person to be served; or, if they are unknown, that diligent search and inquiry have been made to discover such name and residence; and that they are set forth as par-ticularly as is known to the applicant. G.S. 1-98.4(b)(1). "The affidavit required to support an order for service of summons by publication is jurisdictional. The omission therefrom of any of the essential aver-ments on which an order for substitute service is predicated is fatal." *Comrs. of Roxboro v. Bumpass, supra* at 193, 63 S.E. 2d at 146.

Notwithstanding that the officer's report of the accident out of which this action arose contained defendant's address as taken from his driv-er's license, and that thereafter plaintiff's attorney learned of two more addresses, the attorney's affidavit of July 15, 1963, upon which the order for service by publication was obtained, contains no reference to the residence of defendant. Although it alleges that after due and diligent search defendant cannot be found within the state and service of process cannot be had on him within the state, there is no averment in the words of the statute that diligent search and inquiry have been made to discover his residence and that it is set forth as particularly as is known to plaintiff. The supplemental affidavit made on December 3, 1964, which affidavit the judge considered in passing on a motion to dismiss, specifically avers that neither plaintiff's counsel nor the sheriff was able to find defendant at the address shown on his driver's license and that the sheriff did not find him at either of the other two addresses. The failure to find defendant at his last known address, however, does not eliminate the requirement that the applicant for an order allowing service by publication should set out the residence of defendant "as particularly as is known to the applicant." If no address is known, or has never been known, the applicant should so state. G.S. 1-99.2(c) re-quires the clerk of the court, within five days after the issuance of the order for service of process by publication, to mail a copy of the notice "to each party whose name and residence or place of business appear in the verified pleading or affidavit pursuant to the provisions of G. S. 1-98.4." After doing so he is required to make a certificate at the bottom of his order that the notice has been duly mailed. This requirement that the clerk of the superior court mail a notice to the party being served by publication at the best address the applicant can furnish — usually the last known address — is no formal gesture of deference to due process. As every practicing attorney and law-enforcement officer knows, there are among certain classes those persons who would feel an obligation to forward or deliver a letter to one being sought, but who

would feel obliged to give a lawyer or a deputy sheriff no information whatever as to the whereabouts of the one sought.

Failure of a party to receive a copy of the notice mailed as required by G.S. 1-99.2(c) does not invalidate the service of process by publication. A failure to mail the notice when an address is available, however, is a different matter. In *Jones v. Jones, supra,* the applicant failed to meet the requirements of G.S. 1-98.4(b) (1) and (2), and the record failed to show that the clerk of the superior court had mailed the copy of notice as required by G.S. 1-99.2(c). This Court held "the purported service of process by publication" to be fatally defective and the judgment entered on it void. See also *Harmon v. Harmon,* 245 N.C. 83, 95 S.E. 2d 355, wherein a judgment was vacated for failure of the clerk of the superior court to mail the notice.

We note other defects in plaintiff's attempt to perfect this service by publication. The published notice to defendant, had he read it, would have informed him that he was required to make defense not later than September 2, 1963. It omitted, however, to inform him of the penalty for failing to make defense. It did not include the following clause, which is contained in the form of notice prescribed by G.S. 1-99.3: "and upon your failure to do so the party seeking service against you will apply to the court for the relief sought." Had this been the only defect in the publication procedure, the absence of the clause might not have been fatal, but this defect is one of several.

Prior to its repeal in 1953, G.S. 1-99, in specifying the manner of publication, required the clerk of the superior court to direct the publication of the notice "in one or two newspapers to be designated as most likely to give notice to the person to be served." Since the enactment of Sess. Laws of 1953, ch. 919, § 1, codified, *inter alia,* as G.S. 1-99(1), the requirement has been that the clerk make an order for service of process by publication "in a designated newspaper, which newspaper must be one qualified for legal advertising pursuant to G.S. 1-597." Notwithstanding the omission of the statutory requirement that the notice be published in a newspaper most likely to give notice to the defendant, due process still requires it. In lieu of personal service, publication in the newspaper which is most likely to reach the defendant is the least that ought to be required. Plaintiff in this case is a resident of New York; defendant, at the time of the institution of the suit, was, according to the complaint, a resident of Mecklenburg County. Although the record is silent on the matter, presumably that county was also the residence of defendant's mother and of his mother-in-law. Nothing gives any inkling that a notice published in Iredell County, in the *Statesville Record and Landmark,* would ever come to defendant's at-

tention. Under the facts as they appear from the affidavits in this case the publication should have been made in Mecklenburg County. The dangers and abuses which could arise from the publication of process in newspapers in localities foreign to defendant are too apparent to require comment. The purpose of publication is to give notice to the party named in the notice. Publication in an obscure paper or one far removed from any location with which defendant has ever had any contact will not constitute service of summons by publication. See *Webber v. Curtiss*, 104 Ill. 309; *Briggs v. Briggs*, 135 Mass. 306. "The means employed must be such as one desirious of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover B. & T. Co., supra* at 315, 94 L. Ed. at 874, 70 S. Ct. at 657.

We hold that the purported service of process by publication in this proceeding is fatally defective for the reasons (1) that plaintiff has neither alleged nor shown that defendant, with intent to defraud his creditors or to avoid service of process, has departed this state, nor shown that he is concealing himself herein with like intent; and (2) that plaintiff has failed to satisfy the mechanics of the publication statutes. The order denying defendant's motion to quash the service upon him by publication is

Reversed.